## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOY PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cv-00566-CCB-SJF |
| | ) | |
| v. | ) | HON. DAMON R. LEICHTY |
| | ) | |
| CITY OF ELKHART, et al. | ) | HON. MAG. ABIZER ZANZI |
| | ) | |
| Defendants. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |

### PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS'
### MOTIONS TO DISMISS OR STRIKE PORTIONS OF THE COMPLAINT

NOW COMES Plaintiff, JOY PHILLIPS, by her attorneys LOEVY & LOEVY, and

respectfully files this Consolidated Response to Motions to Dismiss or Strike filed by Defendants

City of Elkhart, Seymore, Milanese, Hamlin, Whitmyer, Claybaugh, Wrathell, Vanscoik,

Houser, Young, Roundtree ("Elkhart Defendants"), and Defendants Becker and State of Indiana.

In response, Plaintiff states as follows:

### INTRODUCTION

Plaintiff Joy Phillips became a police officer over 25 years ago. Throughout her career,

Plaintiff has consistently served communities with integrity. Twenty-three years into Plaintiff's

impeccable career, her efforts to bring integrity to law enforcement in Elkhart, Indiana were

stymied. Plaintiff's commitment to fair policing was no match for the code of silent, pervasive

misconduct at the Elkhart Police Department ("EPD").

Plaintiff was an officer who tried to disrupt a corrupt system and was silenced at every

turn. After Plaintiff herself refused to break the law by violating the constitutional rights of

Elkhart citizens, she tried to find someone in power who would take action. Despite her

persistent efforts to inform EPD leadership, an outside oversight agency, and the public, Plaintiff could not overcome the system in which she worked. After unfounded attacks on her character by Defendants, Plaintiff lost everything. Today, the EPD remains corrupt.

Plaintiff now seeks justice for the life and career that were stolen from her by Defendants. In response, Defendants have filed motions to dismiss. As is set forth below, Defendants' arguments misapply legal precedent and misrepresent Plaintiff's factual allegations. Their motions must therefore be denied.

## I.    FACTUAL ALLEGATIONS

In July 2022, Plaintiff was a veteran law enforcement officer with a pristine record. Dckt. 8, Compl., ¶¶ 1-19; 49-58. Plaintiff was regarded as an honest, upstanding officer, having received numerous accolades for her dedication to the communities she served. *Id.* at ¶¶ 50-58. In 2022, Plaintiff challenged corruption in the EPD. *Id.* at ¶¶ 13-16. Her livelihood was permanently altered as a result. *Id.* at ¶¶ 232-36.

### A.    Decades of Documented Police Misconduct Pervaded Elkhart Prior to Plaintiff's Employment at the EPD

By the early 1990s, the EPD's integrity had broken. Dckt. 8, ¶ 198. A "cop gang" of all-white officers known as the "Wolverines" was well-known within the EPD for engaging in racist, unethical practices. *Id.* at ¶¶ 198-201; 205-07. The Wolverines had members who were known affiliates of the Ku Klux Klan, using racial slurs to refer to Black Elkhart citizens. *Id.* at ¶ 201-02. They were described by Former Chief of Police, J.J. Ivory, as a group who "would all stick together and regardless on whatever the issue might be, and that whatever it took, more or less, made me feel they would lie, cheat, defraud, or whatever it took to uphold their cause." *Id.* at ¶¶ 199-202. In 1993, the Elkhart Board of Public Safety issued a report finding that the EPD had failed to implement discipline of officers who committed police misconduct. *Id.* at ¶ 187.

2

As is fully laid out in Plaintiff's Complaint, this corruption has continued for decades. For example, in 2007, Christopher Parish brought a successful federal civil-rights lawsuit following his 1998 wrongful conviction, which was the product of corrupt policies and practices at the municipal level in Elkhart. *See Parish v. City of Elkhart, et al.*, No. 3:07-CV-452, 2010 WL 4054271 (N.D. Ind. Oct. 15, 2010); *Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012); Dkt. No. 8, ¶¶ 212-19.

In 2016, until her illegitimate termination in 2023, Plaintiff personally observed this ongoing misconduct at the EPD, bolstered by Defendant prosecutor Becker's refusal to hold corrupt police accountable. Dckt. 8, ¶¶ 59-69; 113-17; *see State v. Royer*, 166 N.E.3d 380, 401 (Ind. Ct. App. 2021) (finding Defendant Becker "knew by the time of Royer's trial that [the detective who violated Royer's rights] had been removed from the homicide unit[,]" calling into question Royer's conviction, obtained by Defendant Becker).

**B.    Plaintiff's Attempts to Reveal EPD Misconduct and the Ensuing Retaliation Against Her**

On July 14, 2022, Defendant Roundtree ordered Plaintiff to write and sign an illegal search warrant affidavit. Dckt. 8, ¶¶ 70-71; 75. Three other officers had already refused to sign the fabricated affidavit. *Id.* at ¶ 73. Plaintiff also refused. *Id.* at ¶¶ 55-58, 75-76

When Plaintiff tried to speak out about this unconstitutional behavior, time and again, she was silenced. Dckt. 8, ¶¶ 75-83; 86-93; 99-107. Plaintiff notified multiple supervisors that she had been ordered to break the law by signing a baseless warrant. *Id.* at ¶¶ 70-76. Plaintiff told Defendant Roundtree she would not fabricate evidence against Elkhart citizens. *Id*. She also reported the misconduct to supervisor Defendant Seymore, who did nothing to remedy it. *Id.* at ¶ 93. Yet another supervisor, Defendant Whitmyer, instructed Plaintiff to "stop protecting fucking crackheads." *Id*. at ¶ 80. During these attempts to speak out, Plaintiff witnessed a fellow officer

3

illegally enter a citizen's home and lie about it in a report. *Id.* at ¶¶ 86-88. Plaintiff again reported the growing mountain of misconduct she had witnessed to all EPD captains. *Id.* at ¶ 91. Plaintiff offered evidence of the misconduct at the Review Board hearing that followed. *Id.* at ¶¶ 91-92.

After Plaintiff made these initial reports, she was suspended for three days in retaliation. Dckt. 8, ¶ 95. Even though Defendants retaliated against her, Plaintiff did not stop. When she reached the end of her internal reporting channels, both official and unofficial, Plaintiff tried to bring in outside oversight by filing a grievance. *Id.* at ¶ 99. Plaintiff testified during proceedings held by the Elkhart Board of Public Safety, the entity overseeing the police department. *Id.* at ¶¶ 101-07. This public hearing, set to be live-streamed, was Plaintiff's last option to speak out about what had been happening inside EPD.

Defendants City of Elkhart and Becker did not want the extensive evidence of systemic misconduct, in which Defendant Becker had actively participated, to be leaked at the Board of Public Safety hearing. Dckt. 8, ¶¶ 109-110. So, at the request of Defendant City, in a rare move, Defendant Becker (then-deputy county prosecutor, now the elected Elkhart County Prosecutor) attended the October 2022 hearing. *Id.* at ¶¶ 118-20. Defendant Becker attempted to stop the Board of Public Safety from live-streaming Plaintiff's testimony to the public. *Id.* at ¶¶ 110, 121. When Defendant Becker could not halt the proceeding, Becker followed with a letter to Defendant Seymore designed to discredit Plaintiff's allegations, protect the 30-plus years of EPD corruption, and retaliate against Plaintiff for trying to tell the public what was (and still is) happening in this jurisdiction. *Id.* at ¶¶ 121-142. Defendants used Defendant Becker's retaliatory letter to unjustifiably seek Plaintiff's termination. *Id.* at ¶ 142.

On November 1, 2022, Plaintiff was placed on indefinite administrative leave. Dckt. 8, ¶ 143. Plaintiff was ordered to remove her personal effects before being escorted from

the building. *Id.* at ¶¶ 145, 151-54. Her items included a personal audio recording device, which Defendants feared contained evidence of misconduct. *Id.* at ¶¶ 147-49. When Plaintiff refused to turn over the recording device, Defendants Whitmyer, Claybaugh, Wrathell, and Hamlin confined and assaulted Plaintiff in her office, barricading her for a total of 45 minutes before she was able to get out. *Id.* at ¶¶ 150-67.

The Indiana State Police Defendants recommended charges against Defendants arising from the incident, but Defendant Becker refused to authorize charges. Dckt. 8, ¶¶ 171-72. Instead, Defendants Seymore and Milanese illegitimately and falsely charged Plaintiff with misconduct, relying largely on her public testimony from the Board of Safety hearing that Defendant Becker had tried to silence. *Id.* at ¶ 173.

Defendants' misconduct and illegitimate efforts to oust Plaintiff triggered a hearing before Defendant City's Police Merit Commission ("PMC") and Plaintiff was fired shortly thereafter. Dckt. 8, ¶¶ 177-84.

The Complaint lays out each of the federal and state law claims against Defendants through six counts. Dckt. 8, ¶¶ 237-75. Despite Defendants' attempt to abbreviate the Complaint's extensive allegations regarding the longstanding corruption in Elkhart, every count Plaintiff alleged against Defendants must be read against the backdrop of extensive misconduct described above and more fully laid out in the Complaint.

## II.    ARGUMENT

Before the Court are various dispositive motions, including a Motion to Dismiss filed by Defendants Becker and the State of Indiana[1] and a Motion to Dismiss or in the alternative, Motion to Strike by Elkhart Defendants. *See* Dckts. 24-27.[2]

Taken together, Defendants contend: (1) Plaintiff failed to plead a viable First Amendment Retaliation claim (Count I); (2) this alleged insufficiency cuts off Plaintiff's "derivative" claims of Supervisory Liability (Count II), Failure to Intervene (Count III), Conspiracy (Count IV), *Monell* (Count V), and Intentional Infliction of Emotional Distress (Count VI), in part; (3) Plaintiff's *Monell* claim is otherwise insufficient as a "single incident" of misconduct and Plaintiff's municipal allegations are irrelevant; (4) prosecutorial immunity protects Defendant Becker from liability; (5) the Indiana Tort Claims Act ("ITCA") shields EPD officers from liability for IIED; (6) if the Court finds that Plaintiff's First Amendment claim is viable, certain paragraphs of her Complaint should be stricken;[3] and (7) in the event that the Court dismisses Plaintiff's federal-law claims, it should relinquish supplemental jurisdiction over any remaining state-law claims.[4]

For the reasons set forth below, Defendants' motions must be denied.

---

[1] Defendant State of Indiana moves to dismiss claims against it pursuant to the doctrine of sovereign immunity. Dckt. 25, Becker Memo, at 9-10. Plaintiff concedes that the Eleventh Amendment bars such claims and hereby voluntarily dismisses her claims against the State of Indiana.

[2] Defendants have filed two different motions that join in some arguments, but not all. All Defendants join in the arguments as to the sufficiency of Counts I, III, and IV. *See* Dckt. 25, Becker Memo, at 6-8; Dckt. 27, Elkhart Memo, at 1. Elkhart Defendants argue that Counts II, V, and VI against them should be dismissed as derivative of Count I. Dckt. 27, Elkhart Memo, at 2; 6-10. Elkhart Defendants also argue that Count V should be dismissed as insufficient and Count VI should be dismissed under the Indiana Tort Claims Act. *Id.* at 8-10.

[3] This alternative motion to strike was filed by Elkhart Defendants. Dckt. 27, Elkhart Memo, at 11-17.

[4] All Defendants join in this argument. *Id.* at 10-11; Dckt. 25, Becker Memo, at 14.

A.      **Legal Standard**

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In considering a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).

In the Seventh Circuit, plaintiffs only need to pass "two easy-to-clear hurdles" to survive a motion to dismiss: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Id.* at 1084 (quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citing *Twombly*, 550 U.S. at 570. Rather, the complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson*, 614 F.3d at 404 (emphasis in original). At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).

The Federal Rules of Civil Procedure only require a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 8 "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than

on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th

Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Dismissal for

failure to state a claim under Rule 12(b)(6) is proper *only* where "'the allegations in a complaint,

however true, could not raise a claim of entitlement to relief.'" *Virnich*, 664 F.3d at 212 (quoting

*Twombly*, 550 U.S. at 558).

###### B.    Defendant City of Elkhart's Motion to Strike Must Be Denied

As an initial matter, the Court should dispose of Elkhart Defendants' alternative Motion

to Strike portions of the Complaint. Dckt. 27, Elkhart Memo, at 11-17. Plaintiff addresses this

issue first because, contrary to Defendants' contention that EPD's history of police misconduct is

"redundant, immaterial, impertinent, or scandalous[,]" and "lack[s] relevance to her claims,"

these allegations provide critical context for *all claims* against Defendants, including those at

issue in their pending motions. *Id.* at 14; FED. R. CIV. P. 12(f); *see Brooks*, 578 F.3d at 581.

The paragraphs subject to Elkhart Defendants' Motion to Strike describe the systemic

corruption of the EPD. *See* Dckt. 27, Elkhart Memo, at 11; Dckt. 8, ¶¶ 185-226; 243. Defendants

argue the paragraphs should be stricken because "these historical references of wrongdoing by

EPD are so far removed from the instant case that they do not assist in evaluating the City's

customs or practices today, nor do they have any bearing on Plaintiff's claims regarding her

termination and alleged retaliation for exercising her First Amendment rights." Dckt. 27, Elkhart

Memo, at 14-15.

Defendants are sanitizing the substantiated, longstanding allegations about the culture of

corruption in the EPD, which has resulted in wrongful convictions, cost Plaintiff her job and her

sense of safety, and prevented anyone from disrupting this corruption, through official channels

or otherwise. Contrary to Defendants' position, "[a]llegations may be stricken as scandalous if

the matter bears *no possible relation* to the controversy or may cause the objecting party

prejudice[,]" while these contested paragraphs bolster the credibility and are directly relevant to *all* of Plaintiff's allegations. *Talbot v. Robert Matthews Distrib. Co*., 961 F.2d 654, 664 (7th Cir. 1992) (emphasis added); *see Brooks*, 578 F.3d at 581 (describing the pleading standard "call[ing] for 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations") (quoting *Twombly*, 550 U.S. at 556)). These paragraphs contain allegations that are central to Plaintiff's claims.[5]

Given that the Court must presume as true Plaintiff's allegations that the EPD has had a decades-long culture of misconduct, these facts are not "far removed," but instead demonstrate the context in which Plaintiff exercised her First Amendment right. To credit Defendants' argument that these paragraphs are "irrelevant clutter" and "serve only to stir emotions, cause public outrage, and portray the Elkhart Defendants as inherent wrongdoers" is to extend the code of silence to these proceedings, which this Court must not abide. *See* Dckt. 27, Elkhart Memo, at 15-16.

### C.    The Complaint Pleads a Viable First Amendment Retaliation Claim

Defendants first argue that Plaintiff has not stated a viable First Amendment retaliation claim. Dckt. 25, Becker Memo, at 6-8; Dckt. 27, Elkhart Memo, at 5-6. Defendants misapply the law to the unique factual allegations in this case.

To state a claim for First Amendment retaliation, a plaintiff must allege that she engaged in constitutionally protected speech, causing her employer to take adverse action against her. *See Kristofek v. Village of Orland Hills*, 832 F.3d 785, 792 (7th Cir. 2016). When the plaintiff is a public employee, whether her speech is constitutionally protected requires that: (1) plaintiff

---

[5] Plaintiff believes that discovery will further support the factual allegations underlying her First Amendment Retaliation claim. However, if the Court should find that Plaintiff's Complaint does not allege sufficient facts to support a viable claim, she respectfully requests the opportunity to move to amend.

spoke in her capacity as a private citizen; (2) plaintiff spoke on matters of public concern; and (3) plaintiff's interest in expressing such speech was not "outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018); *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)).

Defendants argue that Plaintiff does not plead a viable claim because her speech was "made in her capacity as a police officer" and not as a private citizen. Dckt. 25, Becker Memo, at 2; 7; *see* Dckt. 27, Elkhart Memo, at 2. But Defendants gloss over the facts as alleged and misconstrue the full legal analysis applicable to a public employee's right to speak out without retaliation. "For '[g]'overnment employees are often in the best position to know what ails the agencies for which they work.'" *Lane v. Franks*, 573 U.S. 228, 235-36 (2014) (quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994)). For the reasons below, Plaintiff presents a viable First Amendment Retaliation claim.

### 1. Facts in the Complaint Support a Reasonable Inference that Plaintiff Spoke Out About Internal Elkhart Corruption in Plaintiff's Capacity as a Private Citizen

Plaintiff was a public employee who tried to pierce the EPD code of silence for the benefit of her fellow citizens. *See* Dckt. 8. Because of Defendants' actions, Plaintiff not only failed to disrupt the EPD's corruption, but her efforts cost her everything.

According to the Seventh Circuit, "[p]ublic employees are often 'the members of a community most likely to have informed and definite opinions' on matters of public concern, and [] it remains 'essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.'" *Chrzanowski v. Bianchi*, 725 F.3d 734, 738 (7th Cir. 2013) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2007), in turn quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 572 (1968)).

10

Courts have cautioned that "[a]lthough the First Amendment offers public employees some protection, 'it does not empower them to 'constitutionalize the employee grievance.''" *Lett v. City of Chicago*, 946 F.3d 398, 400 (7th Cir. 2020) (quoting *Garcetti*, 547 U.S. at 420). Nor does the First Amendment protect a public employee's speech when she is simply doing her job, which essentially amounts to "'work product . . . commissioned or created' by the employer." *Chrzanowski*, 725 F.3d at 738 (quoting *Garcetti*, 547 U.S. at 422).

Central to the determination of whether a public employee speaks in her official capacity or her capacity as a citizen is whether she was speaking "pursuant to [her] official duties." *Garcetti*, 547 U.S. at 421. This is a practical determination of law, asking not just whether the speech is part of routine job duties, but whether it falls under "duties the employee is expected to perform[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (quoting *Houskins*, 549 F.3d at 490).

The Seventh Circuit has held that public employees engage in protected speech as private citizens when they speak in certain contexts, including outside legal proceedings. In *Chrzanowski*, a county prosecutor was subpoenaed to testify at grand jury and trial proceedings about misconduct, which was deemed speech in her capacity as a private citizen. 725 F.3d at 738-39. In *Houskins*, a social worker filed a police report regarding off-duty police misconduct, which the court also held was a public employee speaking in her capacity as a private citizen. 549 F.3d at 491. *See also Spalding v. City of Chicago*, 186 F.Supp.3d 884, 904 (N.D. Ill. May 11, 2016) (describing this line of cases as establishing that an employee who "testifies about misconduct to a jury or grand jury, or reports misconduct outside established channels or in violation of official policy, she speaks as a private citizen and her speech is constitutionally protected.").

11

In *Lett*, the Seventh Circuit made it clear that when an employee's refusal to do her job is itself a part of his professional responsibilities, it is not protected speech. *Lett v*, 946 F.3d at 400-01. There, a police investigator's job was to prepare reports about alleged police misconduct. *Id.* at 399. When the investigator's supervisors directed him to alter his reports to include specific evidence, he refused because he believed the evidence was false. *Id.* In holding that the investigator's refusal amounted to speech pursuant to his official duties, the Seventh Circuit compared it to the *Davis* case, where it held that the investigator (much like in *Lett*) "would have had neither occasion nor reason to refuse the request if not for his job." *Lett*, 346 F.3d at 401 (citing *Davis*, 889 F.3d at 845-46). The *Lett* court emphasized that in both cases, the investigators' refusals to alter their reports amounted to "speech that owe[d] its existence to [their] professional responsibilities." *Id.* (quoting *Garcetti*, 547 U.S. at 421).

Moreover, the *Lett* court rejected the investigator's attempt to distinguish from *Davis* in that "Lett was asked to lie about matters of facts" because, the court ruled, "Lett never alleged that he or any of his superiors personally observed the events in the report." *Id.* In other words, the *Lett* investigator's conclusion was "based on inferences" rather than what he witnessed. *Id.* That is not what occurred here.

*Lett* and *Davis* are distinguishable from this case in dispositive ways. All three of these plaintiffs worked for police departments and were required to create and/or sign reports detailing evidence regarding criminal cases. However, Plaintiff here did much more than simply refuse to write and sign an illegal search warrant without probable cause, akin to the investigators' refusal to alter reports in *Lett* and *Davis*. *See* Dckt. 8, ¶¶ 15; 71-75. Plaintiff reported the misconduct to EPD supervisors and testified publicly at the Board of Public Safety hearing about police misconduct she had witnessed (Dckt. 8, ¶¶ 91; 99-111). And, contrary to those cases, Plaintiff

12

most certainly would have had the "occasion" to "refuse" to speak out by, for example, not confronting multiple supervisors at different times or filing a grievance with the Board and then publicly testifying about police misconduct at the EPD. *Id.* at ¶¶ 99-111; *Lett*, 346 F.3d at 401. Moreover, Plaintiff was not drawing inferences. She had extensive personal knowledge, based on what she observed, of the misconduct occurring in Elkhart. *See*, *e.g.*, Dckt. 8, ¶¶ 86-88 (alleging Plaintiff witnessed Officer VanScoik illegally enter a citizen's home and fabricated a report).

Plaintiff's speech went far beyond what the Seventh Circuit has held is simply part of a public employee's job responsibilities. *Cf. Lett*, 346 F.3d at 400-01; *Davis*, 889 F.3d at 845-46. As Plaintiff tried to speak out, she was denied, so she tried again and again. Dckt. 8, ¶¶ 75-83; 86-93; 99-107. She experienced retaliation, and she tried again. *Id.* Plaintiff was not merely seeking to constitutionalize an employee "grievance." *Cf. Lett*, 946 F.3d at 400. She offered testimony at the Elkhart Board of Public Safety meeting, attempting to reveal the misconduct among her fellow officers to the public. *See* Dckt. 8, ¶¶ 101-07. After Defendant Becker joined the conspiracy, Becker's efforts to stifle Plaintiff's speech during and after the hearing ensured that Plaintiff could never credibly speak out again. *Id.* at ¶¶ 121-42.

Lastly, because the misconduct permeated the prosecutor's office and EPD leadership, Plaintiff never had the option to pursue any sort of outside criminal proceeding, more similar to the standard applied to the prosecutor in *Chrzanowski*, or to the social worker who filed a police report in *Houskins*. Plaintiff had no viable options as a public employee to "speak out freely" *anywhere* "without fear of retaliatory dismissal.'" *Chrzanowski*, 725 F.3d at 738 (internal quotations omitted).

Seventh Circuit and Supreme Court precedent do not stand for the proposition that a public employee has no channels through which to speak out, internally or externally, official or

unofficial, without being fired for trying to reveal widespread misconduct. Taking Plaintiff's allegations as true, she was a public employee who could not use any channels or rely on external intervention to activate her First Amendment right to free speech, which she did not relinquish at the door of Elkhart County. *See Pickering*, 391 U.S. at 568. Longstanding precedent does not intend for such a result, especially in this uniquely corrupt jurisdiction.

> **2.** **Facts in the Complaint Support a Reasonable Inference that Plaintiff Spoke Out About Internal Elkhart Corruption, a Matter of Grave Public Concern**

When a public employee speaks, it must also be about a "matter of public concern" to acquire First Amendment protection. *Houskins*, 549 F.3d at 490. In other words, the matter may not be "merely a personal grievance of interest only to the employee." *Id.* (quoting *Sullivan v. Ramirez*, 360 F.3d 692, 699 (7th Cir. 2004).

Without question, when police officers violate the law and mistreat citizens by abusing their power, it is a matter of public concern. *See Fehlman v. Mankowski*, 588 F.Supp.3d 917, 922 (W.D. Wis., March 3, 2022), *aff'd*, 74 F.4th 872 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 561, 217 L. Ed. 2d 299 (2024), *citing Garcetti*, 547 U.S. at 425 (holding that "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance") *and Vose v. Kliment*, 506 F.3d 565, 569 (7th Cir. 2007) (referring to "police misconduct [as] a matter of public concern."). Here, Plaintiff spoke out about the corruption happening at every level of the EPD and at the Elkhart County Prosecutor's office, at the hands of Defendant Becker, which are undeniably matters of grave public concern.

**3.      Facts in the Complaint Support a Reasonable Inference that Plaintiff's Interest in Speaking Out About Internal Corruption Was Not Outweighed By Any Elkhart Interest in Promoting Effectiveness or Efficiency in the Workplace**

Finally, Defendants do not explicitly claim that the government interest in "maintaining and effective and efficient workplace" outweighs Plaintiff's right to speak out about the corruption in Elkhart. *See Houskins*, 549 F.3d at 490; *Chrzanowski*, 725 F.3d at 741. However, it bears mentioning that the EPD's interest in promoting effectiveness or efficiency in its workplace did not outweigh the interest in informing the public of systemic corruption contributing to police misconduct and wrongful convictions. *Id.* Plaintiff's exercise of her First Amendment right to speak sought to prevent citizens from being targeted by racist, unconstitutional conduct by Elkhart police and prosecutors. No credible argument exists that this speech is outweighed by workplace effectiveness or efficiency.

To muzzle public employees from bringing issues of systemic corruption to the public, without any constitutional protection, would prevent well-meaning public servants from telling the public what is happening behind closed doors. "If this were so, police whistleblowers could *never* speak as private citizens entitled to First Amendment protection, a result that *Garcetti* and its Seventh Circuit progeny clearly reject." *Spalding*, 186 F.Supp.3d at 905.[6]

**D.      With a Viable First Amendment Claim, the Complaint Plausibly and Sufficiently Pleads the Remaining Counts Against Defendants**

Defendants allege that Counts II, III, IV, V, and VI are derivative of Plaintiff's First Amendment claim and should be dismissed. Dckt. 25, Becker Memo, at 1-2; 8-9; Dckt. 27,

---

[6] Defendants do not state that Plaintiff's speech was not the prime motivating factor in her suspension or termination. *See* Dckt. 25; Dckt. 27. For that reason, Plaintiff does not substantively address these elements of her First Amendment claim. However, the Complaint's allegations plausibly show that there was a causal connection between Plaintiff's speech and those consequences. *See, e.g.*, Dckt. 8, ¶¶ 95-98; 143; 173-84; *see generally McGreal v. Ostrov*, 368 F.3d 657, 672-76 (7th Cir. 2004).

Elkhart Memo, at 3; 8. According to Defendants, because Plaintiff's First Amendment claim is not viable, this negates Plaintiff's claims for supervisory liability, failure to intervene, conspiracy, *Monell* liability, and intentional infliction of emotional distress (in part). Dckt. 25, Becker Memo. at 1-2; 8-9; Dckt. 27, Elkhart Memo, at 6-8.

Because Plaintiff has already refuted the premise and sole basis for these arguments, which she incorporates by reference here, the Court should deny Defendants' remaining sufficiency arguments, as the viable First Amendment Retaliation claim discussed above upends each of them.

### E.    Elkhart Defendants' "Single-Incident" *Monell* Argument is Fatally Flawed

Elkhart Defendants passingly argue that Plaintiff's claim against the City is "a solitary instance of unconstitutional conduct" and insufficient to state a *Monell* claim, and that "the history of the EPD is of no relevance to Plaintiff's claims[.]" Dckt. 27, Elkhart Memo, at 8.

This argument suffers from several fatal flaws. First, it misrepresents Plaintiff's allegations. This is not a single-incident *Monell* case, nor are the extensive allegations regarding the history of EPD misconduct irrelevant. *See section* II.B, *supra*; Dckt. 8, ¶¶ 60-70; 86-90; 112-17; 185-231; 243-46; 259; 266-71 (alleging facts that establish a long legacy of misconduct). Second, even if this were a "single-incident" case, Defendants misrepresent the law governing this issue. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (discussing that single-incident liability is available where the need for more or different training is so obvious that "the inadequacy [is] so likely to result in a violation of constitutional rights" like plaintiff's). The need for training police officers to not violate citizens' constitutional rights by racially targeting them remains obvious.

16

Finally, at this stage, a determination of the merits of Plaintiff's *Monell* claim, before discovery has even begun, is entirely premature. The Court can therefore set this argument aside without addressing it on the merits.

### F.    Defendant Becker is Not Entitled to Immunity for Her Misconduct

Defendant Becker seeks protection from either absolute or qualified immunity for her misconduct. *See* Dckt. 25, Becker Memo, at 10-13.[7] However, Defendant Becker ignores factual allegations in the Complaint that she participated in a conspiracy to suppress and retaliate against Plaintiff's efforts to break the code of silence in Elkhart, violating Plaintiff's constitutional rights.

### 1.    Absolute Immunity Does Not Shield Defendant Becker

A prosecutor only enjoys absolute immunity insofar as she is "act[ing] within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). The inquiry requires a "functional approach." *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012). That is, a court will "look[] to the nature of the function performed." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)) (internal quotation marks omitted).

Although absolute immunity goes beyond the courtroom, it is "strong medicine, justified only when the danger of [officials' being deflected from the effective performance of their duties] is very great." *Forrester*, 484 U.S. at 230 (1988) (alterations in original) (citation and internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 n.33 (non-courtroom "duties of the prosecutor in [her] role as advocate for the State involve actions preliminary to the initiation of a prosecution"). Against this backdrop, Defendant Becker is not immune.

---

[7] While Plaintiff voluntarily dismisses his IIED claim against Defendant State of Indiana, his claims against Defendant Becker must survive dismissal.

Defendant Becker misrepresents her own actions to manufacture immunity. She claims that her unusual decision to attend the Elkhart Board of Public Safety hearing, which she did to prevent the public from learning about EPD corruption, was pursuant to her *Brady* duties as a prosecutor. Dckt. 25, Becker Memo, at 11. Becker invokes the principle that as a prosecutor, she must be protected from "harassment by unfounded litigation" that could "cause a deflection of the prosecutor's energies from his public duties, [which could] . . . shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (quoting *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014)). Defendant Becker[8] goes on to cite non-binding cases from other circuits in support of her position that she should be insulated for her misconduct in this case. Dckt. 25, Becker Memo, at 12.

Yet, Plaintiff's Complaint contains detailed factual allegations about how Defendant Becker engaged in misconduct, under the guise of her position as a prosecutor, to cover up the misconduct of the true EPD *Brady* officers and smear Plaintiff to keep her quiet. Dckt. 8, ¶¶ 102-40. Defendant Becker ignores, and therefore misrepresents, much of the extensive narrative laid out in Plaintiff's Complaint, showing how Becker engaged in behavior outside the bounds of prosecutorial actions. Defendant Becker attended the Elkhart Board of Public Safety hearing, attempted to prevent the hearing from being live-streamed to the public, and wrote a letter to discredit Plaintiff without having reviewed any exhibits or speaking to witnesses regarding the underlying investigation about which Plaintiff testified. *Id.* at ¶¶ 136-40; *see Fields*, 740 F.3d at 1111 (Although absolute immunity is well-established for these functions, a prosecutor is not absolutely immune for acts that "go beyond the strictly prosecutorial to include investigation.")

---

[8] Ironically, around the same time that Defendant Becker joined the conspiracy and retaliated against Plaintiff, Defendant Becker has testified in separate lawsuits that her office does not maintain a list of *Brady* officers.

(citing *Buckley*, 509 U.S. at 275-76); *Forrester*, 484 U.S. at 230. Despite claiming she was carrying out some version of her *Brady* duties, Defendant Becker admitted in her letter that she was "not personally familiar with most of the subject matter about which [Plaintiff] stated certain 'facts' and opinions[.]" Dckt. 25-1. It is disingenuous for Defendant Becker to claim that she was evaluating Plaintiff's credibility while Becker was entirely unfamiliar with the subject matter of Plaintiff's testimony.

Taking all allegations in Plaintiff's Complaint as true, Defendant Becker was acting *outside* her prosecutorial role when she attended the hearing and wrote this letter designed to cover up misconduct. As such, Defendant Becker does not enjoy absolute immunity.

### 2.    Qualified Immunity Also Does Not Shield Defendant Becker

Nor does Defendant Becker enjoy qualified immunity. In invoking this defense, Defendant Becker again mischaracterizes the breadth of Plaintiff's allegations against her: "Becker's determination that the prosecutor's office would not prosecute Phillips' cases without independent corroborating evidence and putting the police chief on notice of her determination that the prosecutor's office must disclose Phillips' grievance hearing testimony as impeachment information do not violate a clearly established right." Dckt. 25, Becker Memo, at 13.

"Qualified immunity is a doctrine that 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal." *Jacobs v. City of Chi.*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring). This is because all a plaintiff must do to state a claim under § 1983 is to allege that a person acting under color of state law has deprived her of a federal right. *Gomez v. Toledo*, 446

U.S. 635, 640 (1980). The Supreme Court has warned that lower courts may never alter this basic pleading requirement of § 1983 claims simply because a defendant asserts a qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 594-97 (1998); *see also Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.") (quoting *Jacobs*, 215 F.3d at 775). Viewing evidence most favorable to Plaintiff, she has shown that Defendant Becker is not entitled to qualified immunity for her misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part on other grounds).

It was clearly established long before 2022 that a public employee has the "right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 417. However, the inapplicability of qualified immunity here goes beyond Plaintiff's clearly established First Amendment right to speak out. Defendant Becker's duty as a prosecutor was to uphold the law and prosecute criminal activity. *See Berger v. United States*, 295 U.S. 78, 88 (1935) (describing the role of prosecutor, noting "[i]t is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."). Yet, Defendant Becker joined a conspiracy to *cover up*, rather than *prosecute*, misconduct by EPD officers whom she has relied upon to secure wrongful convictions, and to retaliate against Plaintiff, an upstanding officer, for trying to speak out about this misconduct. Dckt. 8, ¶¶ 112-42. Perhaps most egregiously, Defendant Becker ventured outside the courtroom to silence Plaintiff. *Id*.

These actions certainly do not constitute immune discretionary decisions, nor do they only violate the First Amendment; they are akin to manufacturing false evidence against a

20

criminal defendant. *See Fields v. Wharrie*, 740 F.3d 1107, 1113 (7th Cir. 2014) (describing

qualified immunity for a prosecutor's fabrication of evidence prior to prosecution as "a

breathtaking injustice"). Defendant Becker's abuse of her powerful position as a prosecutor in

manufacturing credibility accusations in support of a conspiracy to silence Plaintiff is not

behavior that is subject to the cloak of immunity, qualified or otherwise.

> **G.    Elkhart Defendants Are Not Entitled to Immunity From Plaintiff's IIED Claim**

Elkhart Defendants argue that both EPD officers and the City of Elkhart are shielded

from liability for Plaintiff's IIED claim because the officers were acting in the scope of their

employment and the City is not liable under the doctrine of *respondeat superior*. Dckt. 27,

Elkhart Memo, at 9-10.

The ITCA generally shields government employees from liability when their conduct was

within the scope of their employment. *See* Ind. Code §34-13-3-5(c). However, employees are *not*

shielded from liability when they perform their employment actions maliciously and cause harm.

*Cantrell v. Morris*, 849 N.E.2d 488, 497n.6 (Ind. 2006) (noting that government employees are

immune from personal liability "unless…an act or omission of the employee that causes a loss

is…malicious[,]" as long as the complaint "contain[s] a 'reasonable factual basis supporting the

allegations.'" ) (citing Ind. Code §34-13-3-5(c)); *see also Feldhake v. Buss*, 36 N.E.3d 1089,

1093 (Ind. Ct. App. 2015) ("To sue a government employee personally, the plaintiff 'must allege

that an act or omission….is… malicious…[or] willful and wanton").

As extensively laid out above, Plaintiff has alleged facts supporting multiple claims

against Elkhart Defendants for maliciously violating Plaintiff's constitutional rights. *See* section

II.C, *infra*. Plaintiff has thus properly sued Elkhart Defendants in federal court for their

unconstitutional, malicious misconduct that is afforded no immunity. The Court should set this argument aside.

### H.    The Court Should Not Relinquish Supplemental Jurisdiction Over Plaintiff's IIED Claim

In a last-ditch effort to expel Plaintiff from federal court, Defendants argue that if the Court dismisses Plaintiff's federal claims but finds she has pleaded a viable state-law claim for Intentional Infliction of Emotional Distress ("IIED"), the Court should relinquish jurisdiction. Dckt. 25, Becker Memo, at 14; Dckt. 27, Ekhart Memo, at 10-11.

A district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos*., 29 F.3d 1244, 1251 (7th Cir. 1994). "Once jurisdiction is established based on a properly brought federal claim, § 1367 contains no requirement that such jurisdiction be relinquished. The exercise of supplemental jurisdiction is purely discretionary." *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015).

It would be premature to fully address this argument now. The Court has not dismissed any of Plaintiff's five well-pleaded federal claims, which hinge upon a culture of misconduct that exists in Elkhart. Dckt. 8, ¶¶ 237-71. Defendants' argument for dismissal of these claims is a house of cards – they present an oversimplified argument for dismissal of a single claim (Count I) and use that as the basis for to argue summarily for dismissal of the remaining four well-pleaded claims. Dckt. 25, Becker Memo, at 8-9; Dckt. 27, Elkhart Memo, at 6-8. The Court

should therefore decline to exercise its discretion to relinquish supplemental jurisdiction over the state-law IIED claim.[9]

## CONCLUSION

Plaintiff Phillips has sufficiently alleged that Defendants violated her First Amendment rights, as well as her rights under Indiana Law. Defendants' motions largely ignore the allegations in the Complaint and misapply binding precedent. As such, and for the reasons discussed above, Defendant Becker's Motion to Dismiss and Elkhart Defendants' Motion to Dismiss or Strike should be denied. In the alternative, to the extent that the Court finds any allegations insufficiently pleaded, Plaintiff seeks leave to file an amended complaint. *See* FED. R. CIV. P. 15(a).


DATED: Dec. 2, 2024                                    Respectfully submitted,

                                                       /s/ Elliot Slosar
                                                       *One of Plaintiff's Attorneys*


Jon Loevy
Elliot Slosar
Margaret E. Campbell
Kathryn Montenegro
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902

---

[9] Should the Court dismiss all of Plaintiff's well-pleaded federal-law claims at this stage, Plaintiff respectfully requests the opportunity to fully brief the issue of whether the Court should retain its supplemental jurisdiction over her IIED claim. The Seventh Circuit has found at least three scenarios in which federal courts might retain supplemental jurisdiction, and to fully brief these scenarios now would be premature. *See Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008) (the Court should not relinquish jurisdiction if "(1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided.") In the interest of judicial economy, Plaintiff asks the Court to wait until this issue is ripe, if at all.

## **CERTIFICATE OF SERVICE**

I, Elliot Slosar, certify that the foregoing motion was sent via CM/ECF to all counsel of record.

<u>/s/ Elliot Slosar</u>
Attorney for Plaintiff