# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JOY PHILLIPS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:24-CV-00566 |
| CITY OF ELKHART, KRIS SEYMORE, DAN MILANESE, TRAVIS HAMLIN, ANDREW WHITMYER, SCOTT CLAYBAUGH, JAMES WRATHEL, MICHAEL VANSCOIK, DENISE HOUSER, DUSTIN YOUNG, BRANDON ROUNDTREE, VICKI E. BECKER, In their individual capacities, and the STATE OF INDIANA, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS THEREOF**

COME NOW the Defendants, City of Elkhart, Kris Seymore, Dan Milanese, Travis Hamlin, Andrew Whitmyer, Scott Claybaugh, James Wrathell, Michael Vanscoik, Denise Houser, Dustin Young, and Brandon Roundtree (collectively, the "Elkhart Defendants"), by counsel and reply in further support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint or alternatively their Motion to Strike as follows:

## I. REPLY IN SUPPORT OF MOTION TO DISMISS

1. Plaintiff argues that her speech to the Board of Public Safety about alleged misconduct within the Elkhart Police Department ("EPD") was made as a private citizen and not as an employee of the EPD. [ECF 35, pp. 11-14]. This argument lacks merit. In *Fehlman v. Mankowski*, 74 F.4th 872 (7th Cir. 2023), a former police department officer sued the police chief, alleging first amendment retaliation for raising concerns about police misconduct to the

commission that oversaw the department. *Id*. at 874-75. The trial court dismissed the plaintiff's suit for speaking in his capacity as a public employee, which the Seventh Circuit affirmed. *Id*. at 874.

2.  The court in *Felhman* explained that the composition of the board to which an officer speaks is a key factor in determining whether the officer's speech is part of their official duties. *Id*. At 876. In *Fehlman*, because the city's commission, or "board," had statutory disciplinary authority over the department, it was strongly indicative of the board functioning within the department's "chain of command." *Id*. As a result, the officer's remarks to the board about alleged misconduct were considered "a form of internal grievance" in Plaintiff's capacity as a public employee. *Id*. *See also Tamayo v. Blagojevich*, 526 F.3d 1074, 1092 (7th. Cir. 2008) (holding employee's report to "a legislative committee responsible for overseeing the agency's activities" was unprotected First Amendment speech); *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 904 (N.D. Ill 2016) (observing the "settled principle that if a public employee reports official misconduct … to an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment").

3.  Plaintiff's comparison of her statements to testimony before a grand jury or at a jury trial is misplaced [ECF 35, pp. 11-14]. She claims that she "tried to bring in outside oversight by filing a grievance" with the Board of Public Safety. [*Id*. at 4]. However, the Board of Public Safety does not constitute an "outside channel" in this context. Instead, it functions as an internal oversight body with formal disciplinary authority over the police department specifically as it related to her grievance hearings.[1] Under Ind. Code Ann. § 36-8-3-2, the Board of Public Safety

---

[1] Indeed, the Board of Public Safety has jurisdiction and disciplinary authority over the department concerning her grievance, while the Police Merit Commission is the entity responsible for the broader oversight of the department such as termination decisions.

has "exclusive control over all matters and property" related to the police department, including the authority to adopt rules for discipline of its members. Plaintiff herself asserts that the Board of Public Safety is "the entity overseeing the police department." [ECF 35, p. 4].

5.  In this case, Plaintiff filed a grievance with the Board of Public Safety stemming from her suspension and spoke about matters directly tied to her employment with the EPD. [ECF 35 p. 4]. Her statements to the Board of Public Safety addressed alleged "misconduct affecting an area within [her] responsibility." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). Additionally, Plaintiff spoke to the Board to offer "insight from [her] perspective as an employee" to assist the Board in fulfilling its oversight responsibilities for the police department. *Fehlman*, 74 F.4th at 877. Simply put, Plaintiff's remarks to the Board of Public Safety were made in her capacity as a public employee fulfilling her official duties, and Plaintiff has failed to prove otherwise. Like the Seventh Circuit in *Fehlman*, this Court should similarly conclude that the statutory authority and structure of the Board of Public Safety categorize Plaintiff's speech to the Board as within her official capacity as an EPD officer.

4.  Plaintiff's remaining speech – such as refusing to draft a warrant affidavit – was clearly within her job responsibilities as a law enforcement officer and not protected. The Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and the Seventh Circuit in *Lett v. City of Chicago*, 946 F.3d 398 (7th Cir. 2020), make clear that speech owing its existence to an employee's job duties is not protected under the First Amendment. *See also Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017) (holding that "a police officer's duty to report official police misconduct is a basic part of the job."). Refusals to perform job-related tasks, even when morally or ethically motivated, are not protected speech. *Lett,* 946 F.3d at 399-401.

7. For the same reasons fully discussed in Defendants' Brief in Support of its Motion to Dismiss, because Plaintiff's First Amendment claim fails, she cannot proceed on her derivative claims including Counts II (supervisory liability), III (failure to intervene), IV (conspiracy to deprive constitutional rights), V (*Monell* claim against the City of Elkhart) and VI (IIED).

8. Plaintiff's argument that a need for training within the department supports her *Monell* claim is fundamentally flawed. The principles outlined in *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) assume the existence of an underlying constitutional violation – a prerequisite that is entirely absent here. Plaintiff has not established any violation of her constitutional rights, rendering her reliance on *Harris* inapposite. *See also Palka v. Shelton*, 623 F.3d 447, 455 (7th Cir. 2010) (dismissing *Monell* claim after observing that "because [the] complaint fail[ed] to state a claim for any constitutional violation, the City and County [could not] be held liable; a *Monell* claim requires a municipal policy or practice that results in a constitutional deprivation") (citation omitted).

9. Nor does Plaintiff's attempt to tie decades-old allegations of unrelated misconduct (e.g., the Wolverines) to her termination provide support for her *Monell* claim. These historical events bear no factual connection to her case and fail to demonstrate a continuing municipal policy, custom, or practice relevant to the alleged harm. *See e.g., Williams-Saddler v. Lancaster*, No. 2023-CV-04815, 2024 U.S. Dist. LEXIS 70512, at *4 (N.D. Ill. Apr. 18, 2024) ("[a]lthough these well-known incidents" of excessive force over the last 50 years "are indeed scandalous," they are "so old and outrageous" that they bear no material relevance to whether the City maintained a custom or practice of condoning excessive force in 2023). Without such a nexus, Plaintiff's speculative reliance on these outdated events cannot sustain her *Monell* claim, warranting its dismissal.

10. Finally, Plaintiff has failed to allege sufficient facts to overcome Defendants' immunity from IIED. The requirements to prove this tort are 'rigorous' and the conduct at issue must exceed all bounds usually tolerated by a decent society" and cause "mental distress of a very serious kind." *Ledbetter v. Ross*, 725 N.E.2d 120, 124 (Ind. Ct. App. 2000). That is, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Creel v. I.C.E. & Assocs.*, 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002).

11. Plaintiff's Complaint lacks any factual allegations capable of meeting this stringent standard. The actions of the officers in question – investigating Plaintiff's behavior and her subsequent termination – constitute routine professional responsibilities, not the type of egregious misconduct necessary to sustain an IIED claim. Plaintiff's inability to allege specific facts demonstrating outrageous or extreme behavior is fatal to this claim, and Defendants' conduct remains well within the bounds of lawful and appropriate action.

## II.     REPLY IN SUPPORT OF MOTION TO STRIKE

1. Plaintiff's attempt to justify the inclusion of allegations spanning three decades – including references to a "cop gang" and the Ku Klux Klan – under the guise of providing "critical context" [ECF 35, p. 8] is unavailing. These allegations, including the 1993 Board of Public Safety report and the *Parish* case from 2010, bear no relationship to the specific actors or events central to Plaintiff's claims of retaliation and termination in 2022–2023. They are entirely disconnected from the case at hand and serve no legitimate purpose. As such, these allegations should be stricken under Rule 12(f) for the reasons outlined in Defendants' Brief in Support of its Motion to Strike.

2. Striking paragraphs 185–226 and 243 does not, as Plaintiff suggests, "extend the code of silence" to these proceedings. [ECF 35, p. 9]. Rather, it adheres to established law, which consistently holds that irrelevant allegations have no place in legal pleadings. See *Williams-Saddler*, No. 2023-CV-04815, 2024 U.S. Dist. LEXIS 70512, at *7–8. Plaintiff's attempt to characterize this Court's application of procedural rules as complicity in perpetuating misconduct is baseless and underscores the inflammatory nature of these allegations. The inclusion of such speculative historical claims is designed not to address the alleged violation of Plaintiff's First Amendment rights but to unfairly characterize EPD as inherently corrupt. This tactic is improper and prejudicial, further justifying the need to strike these allegations contained in paragraphs 185–226 and 243.

## III. CONCLUSION

For the foregoing reasons, as well as the reasons provided in Defendants' original Brief in Support, Defendants respectfully request that this Court grant the relief sought in its Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike [ECF 26].

Respectfully submitted,

/s/ Rafael P. McLaughlin
Rafael P. McLaughlin (32466-02)
REMINGER CO., L.P.A.
1690 Broadway, Bldg. 19, Suite 10
Fort Wayne, IN 46802
T: 260-755-6210
F: 260-755-2346
rmclaughlin@reminger.com
**Counsel for Defendants**

# CERTIFICATE OF SERVICE

      I hereby certify that on December 16, 2024, I filed a copy of the foregoing *Elkhart Defendants' Reply Brief in Support of their Motion to Dismiss and Motion to Strike* electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF system.

| Attorneys for Plaintiff | Attorney for Co-Defendants State of Indiana & Vicki E. Becker |
|---|---|
| Elliot Slosar | David J. Beach |
| Elliot@loevy.com | DBeach@eichhorn-law.com |
| Jon Loevy | Carly A. Brandenburg |
| Jon@loevy.com | CBrandenburg@eichhorn-law.com |
| Kathryn Montenegro | Eichhorn & Eichhorn, LLP |
| Katiem@loevy.com | |
| Loevy & Loevy | |

Attorney for Co-Defendant Kris Seymore
Peter J. Agostino
Agostino@aaklaw.com
Tracey S. Schafer
Schafer@aaklaw.com

/s/ Rafael P. McLaughlin
Rafael P. McLaughlin (32466-02)
REMINGER CO., L.P.A