UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOY PHILLIPS,

        Plaintiff,

v.                              CAUSE NO. 3:24cv566 DRL-AZ

CITY OF ELKHART *et al.*,

        Defendants.

OPINION AND ORDER

Joy Phillips was fired as a detective with the Elkhart Police Department. She alleges that her termination was in retaliation for exercising her First Amendment rights and reporting what she viewed as police misconduct. She says she told supervisors and the Elkhart Board of Public Safety that oversees the department. Accepting this all as true (as the court procedurally must today), when she spoke, she acted not as a private citizen—a prerequisite to this claim—but as a police officer doing what her job expects of her. Whether another claim might exist, she cannot assert a First Amendment retaliation claim as a matter of constitutional law.

On August 5, 2024, Ms. Phillips filed an amended complaint against the State of Indiana, the City of Elkhart, then-Chief Kris Seymore, then-Captain Andrew Whitmyer, Sergeant Dustin Young, Officer Dan Milanese, Officer Travis Hamlin, Officer Scott Claybaugh, Officer James Wrathel, then-Officer Michael VanScoik, Officer Denise Houser, Officer Brandon Roundtree, and Elkhart County Prosecutor Vicki Becker. All defendants move to dismiss her pleading under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim or alternatively lack of supplemental jurisdiction. The court grants the motions because she has not plausibly pleaded a First Amendment retaliation claim as a matter of law, because she has not offered another basis

to sustain any federal claim under 42 U.S.C. § 1983, and because the court lacks supplemental jurisdiction over her remaining state law claim.

## BACKGROUND

The court takes the well-pleaded allegations and reasonable inferences from the amended complaint as true when deciding this motion. This background recounts these allegations and inferences. Ms. Phillips first began her career as a police officer more than 25 years ago before joining the Elkhart Police Department in 2016 [8 ¶ 1, 4]. She was promoted to the Detective Bureau in September 2017 and received exemplary work reviews from 2016 to 2022 [*id.* ¶ 7-8].

On July 14, 2022, Officer Brandon Roundtree ordered Ms. Phillips to write and sign an illegal search warrant and affidavit after three previous male officers refused to do so [*id.* ¶ 12, 70, 73]. Also present was Captain Andrew Whitmyer [*id.* ¶ 72]. Ms. Phillips says she declined because there was no probable cause [*id.* ¶ 13, 74]. She told the others she wouldn't sign an illegal warrant or engage in police misconduct and was "willing to take the write up for refusing to do something when [she was] within [her] right to refuse," citing her First Amendment rights [*id.* ¶ 14-15, 77]. Officer Roundtree then threatened to demote Ms. Phillips from detective to patrol if she pushed the issue [*id.* ¶ 79].

Ms. Phillips alleges Captain Whitmyer then conspired with Officer Roundtree to retaliate against her [*id.* ¶ 80]. Captain Whitmyer told Ms. Phillips to "stop protecting f****** crackheads," a statement Ms. Phillips says is consistent with the pattern and practice of white Elkhart police officers conspiring to violate the constitutional rights of black Elkhart citizens [*id.* ¶ 80-81]. Ms. Phillips lists other instances of "egregious police misconduct," including violations of criminal laws, that didn't lead to the various officers' terminations [*id.* ¶ 59-69].

Following her refusal to sign a warrant (she likely means warrant application) and without probable cause, Ms. Phillips then witnessed Officer Michael VanScoik forcibly open a door to a building without a warrant [*id.* ¶ 86]. She says Officer VanScoik falsely reported that the door had been ajar [*id.* ¶ 87-88]. Despite this, he was subsequently promoted to sergeant [*id.* ¶ 89].

Ms. Phillips also reported "egregious" police misconduct to Elkhart Police Department captains and Chief Kris Seymore [*id.* ¶ 91-93]. She says she then received a three-day suspension in retaliation for making these reports, a punishment not received by the other three male officers who also refused to sign the search warrant at Officer Roundtree's direction on July 14, 2022 [*id.* ¶ 94-98]. Believing the suspension violated her constitutional rights, Ms. Phillips filed a grievance as part of the city's formal administrative process [*id.* ¶ 20, 99].

In due course, the Elkhart Board of Public Safety held a hearing on the matter on October 11 and 25, 2022 [*id.* ¶ 100]. Ms. Phillips believes that she presented evidence demonstrating her suspension wasn't justified [*id.* ¶ 101]. She also testified on various topics, including that she had witnessed police misconduct, that she was ordered to violate the constitutional rights of Elkhart citizens, and that she was ordered to sign a search warrant without probable cause [*id.* ¶ 102-106, 108]. Ms. Phillips also testified that Sergeant Dustin Young was known as a "Brady" officer due to his credibility issues [*id.* ¶ 107].

Ms. Phillips alleges that the defendants, including the City of Elkhart and Elkhart County Prosecutor Vicki Becker, were "outraged" that Ms. Phillips exposed police misconduct in this public forum [*id.* ¶ 109-110]. So much so, according to Ms. Phillips, Ms. Becker attempted to stop the Board of Public Safety from live streaming the hearing [*id.* ¶ 110]. Ms. Phillip notes Ms. Becker doesn't normally attend these hearings, but she did so on this occasion at the city's request [*id.* ¶ 119-120]. According to Ms. Phillips, Ms. Becker admitted she attended the hearing due to

an ongoing investigation into the incident where Ms. Phillips refused to sign a warrant application and the prosecutor's concerns that information from that investigation and broader police misconduct would be discussed and disseminated to the public [*id.* ¶ 121-123].

After the hearing, says Ms. Phillips, the defendants conspired yet again to retaliate against her [*id.* ¶ 111]. Ms. Phillips alleges that Ms. Becker, as a practice, withholds exculpatory and impeachment evidence in criminal prosecutions, especially evidence pertaining to sustained allegations of police misconduct [*id.* ¶ 117]. Ms. Phillips cites these practices as being directly related to Ms. Becker's motive to retaliate against her [*id.*].

As part of this retaliation, Ms. Becker wrote a letter to Chief Kris Seymore "designed to end [Ms. Phillips'] career," despite Ms. Becker having no knowledge of the investigation that Officer Phillips testified about at her grievance hearing [*id.* ¶ 132, 136-138]. In the letter, Ms. Becker labeled Ms. Phillips as having a reputation for dishonesty as a "Brady" officer, a label that will follow her through her career and prevent her from testifying against criminal defendants [*id.* ¶ 140]. Other defendants used this letter to seek her termination [*id.* ¶ 142].

Chief Seymore placed Ms. Phillips on indefinite administrative leave on November 1, 2022 after receiving the letter [*id.* ¶ 143]. Chief Seymore then ordered Captain Whitmyer to accompany Ms. Phillips to her office so she could retrieve her personal belongings [*id.* ¶ 145]. There, the two met Officer Travis Hamlin [*id.* ¶ 146]. Among the items Ms. Phillips removed from her office was an audio recording device [*id.* ¶ 148]. Captain Whitmyer ordered Ms. Phillips to turn over the device, as he realized she may have used it to record police misconduct [*id.* ¶ 149]. Ms. Phillips refused [*id.* ¶ 150]. Ms. Phillips says Captain Whitmyer then assaulted her and confined her without her permission and without justification [*id.* ¶ 151-152]. Officer Hamlin barricaded Ms. Phillips's office door alongside Captain Whitmyer [*id.* ¶ 153]. At some point, Captain Whitmyer

grabbed Ms. Phillips' backpack and told her she couldn't leave the building until he inspected her backpack and she surrendered the recording device [*id.* ¶ 155].

Ms. Phillips cites Captain Whitmyer's actions as being part of the overall conspiracy to deprive her of her constitutional rights [*id.* ¶ 156]. Thereafter, Captain Whitmyer recruited Officers James Wrathell, Travis Hamlin, and Scott Claybaugh to join the conspiracy by also confining her [*id.* ¶ 157-159]. Ms. Phillips was able to slide her body past some of the defendants to exit the office, but Captain Whitmyer again attempted to take her backpack and Officer Claybaugh ran to another door to block her exit [*id.* ¶ 161-165]. Ms. Phillips was eventually able to leave both that room and the building [*id.* ¶ 166]. She alleges that, though the Indiana State Police recommended criminal confinement charges, charges weren't authorized because Ms. Becker, the county prosecutor, was part of the conspiracy [*id.* ¶ 171-172].

Chief Seymore and Officer Dan Milanese sought Ms. Phillips' termination after falsely and illegitimately charging her with incidents of misconduct, most of which consisted of statements Ms. Phillips made during the October 2022 hearing before the Board of Public Safety [*id.* ¶ 173]. At this time, Ms. Phillips was meeting the City of Elkhart's legitimate expectations and hadn't previously been disciplined or received a negative performance evaluation [*id.* ¶ 176].

In 2023, the City's Police Merit Commission held a hearing on the termination request, which Ms. Phillips described as a "sham proceeding" [*id.* ¶ 178-179]. She says the City violated her due process rights by refusing to provide discovery and produce witnesses under its control for depositions before the hearing, and also by refusing to present witnesses under its control at the hearing [*id.* ¶ 180-182]. The Merit Commission agreed with her termination, she says, at the request of Chief Seymore and Officer Milanese [*id.* ¶ 183-184].

5

Against this array of defendants, Ms. Phillips alleges in her amended complaint a retaliation claim under the First Amendment (count 1), a § 1983 supervisory liability claim (count 2), a § 1983 failure to intervene claim (count 3), a § 1983 conspiracy claim (count 4), a *Monell* municipal liability claim (count 5), and a state law claim for intentional infliction of emotional distress (count 6). She seeks damages. The officers and the City of Elkhart filed a motion to dismiss all claims, or in the alternative to strike portions of her pleading. The State of Indiana and Ms. Becker filed a motion to dismiss all claims too. Save for voluntarily dismissing the State of Indiana, Ms. Phillips argues that all claims should remain.[1]

Thereafter, the defendants filed a joint notice of supplemental authority in support of their motions to dismiss. They cite an Elkhart Circuit Court decision affirming Ms. Phillips' termination following her petition for judicial review of the Police Merit Commission's decision. They argue issue preclusion (collateral estoppel) prevents Ms. Phillips from relitigating her termination here. Ms. Phillips disagrees, arguing that because the issues presented to the state court aren't identical to those in this case, collateral estoppel doesn't apply.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[1] In her combined response to these motions to dismiss, Ms. Phillips concedes that the Eleventh Amendment bars her claims against the State of Indiana and voluntarily offers to dismiss it as a defendant.

6

*Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations omitted).

## DISCUSSION

Ms. Phillips claims violations of her rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, she must show that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). She may bring a § 1983 claim only against an individual "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

A. *Collateral Estoppel.*

In response to a Rule 12(b)(6) motion to dismiss, the court often looks only to the allegations in the operative complaint to determine whether they pass muster, without considering extraneous documents or evidence, else the rules require that the motion "be treated as one for summary judgment." Fed. R. Civ. P. 12(d). As exceptions, the court may consider the operative complaint's attachments, documents incorporated by reference in that pleading, and judicially noticeable facts. *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). The court may only take judicial notice of facts in the public record that are "undisputed." *Gen Elec. Cap. Corp. v. Lease*

*Resol. Corp.*, 128 F.3d 1074, 1076, 1081 (7th Cir. 1997); *see also* Fed. R. Evid. 201(b) (a fact "not subject to reasonable dispute").

State court orders "are public records and appropriate subjects of judicial notice." *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018). The defendants ask the court to take judicial notice of the findings and conclusions from *Phillips v. Elkhart Police Merit Comm'n*, Cause No. 20C01-2309-MI-411, where the Elkhart Circuit Court affirmed the Police Merit Commission's termination of Ms. Phillips and found that the commission's administrative findings and sanction of dismissal were not arbitrary and capricious. Ms. Phillips opposes this request, arguing judicial notice is improper because her federal lawsuit directly challenges the Elkhart Circuit Court's findings, making them subject to reasonable dispute.

One must be careful. The defendants base their request in part on the idea that Ms. Phillips challenges her "wrongful termination" here, but that isn't in truth one of her claims in the same sense as the state court reviewed her termination for arbitrary or capricious action. The defendants likewise stretch the state court's ruling as deciding that her termination "was neither arbitrary *nor retaliatory*," but the state court never reached this second conclusion. Winnowing this chaff to get at the wheat, the request to take judicial notice becomes simpler.

The court agrees judicial notice may not be taken for the truth of disputed facts within the state court's order, but the existence and scope of that order (as a public record) remain proper subjects of judicial notice. *See In re Lisse*, 905 F.3d at 496. To put a finer point on this, whether Ms. Phillips might dispute certain findings by the state court, no one can fairly contest the subject matter of the issues the state court decided. Accordingly, the court takes judicial notice of the Elkhart Circuit Court's order for the limited purpose of recognizing the existence of the order and the state court proceedings as well as the issues decided there. *See United States v. Payne*,

8

964 F.3d 652, 656 (7th Cir. 2020) ("well-settled that we may judicially notice court records as evidence of prior judicial actions").

When a state court renders an earlier judgment, as the Elkhart Circuit Court did here, full faith and credit "requires [federal] courts to give [the] state court judgment the same preclusive effect it would have in state court." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017); *see* 28 U.S.C. § 1738. The court looks to Indiana law to ascertain the preclusive effect of the Indiana state court judgment. *See Mains*, 852 F.3d at 675.

Under Indiana law, "issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit." *Miller Brewing Co. v. Ind. Dep't of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009). The doctrine applies to matters actually litigated and decided, but not to all matters that could have been decided. *Kirby v. Second Bible Missionary Church, Inc.*, 413 N.E.2d 330, 332 (Ind. Ct. App. 1980). The court may decide issue preclusion at this motion to dismiss stage, albeit construing the well-pleaded allegations in the light most favorable to Ms. Phillips. *See Washington Grp. Int'l, Inc. v. Bell, Boyd & Lloyd, LLC*, 383 F.3d 633, 636-37 (7th Cir. 2004); *see also A.H. v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016); *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

The Elkhart Circuit Court's order called the Merit Commission's disciplinary findings and Ms. Phillips' termination neither arbitrary nor capricious as part of its authority of administrative review [40-1]. Certain other subissues were decided in reaching these two main conclusions too, but the defense makes no effort to identify these subissues precisely or explain how they now overlap (contra relitigation) the issues that must be decided today, except to contend that the state court decided the non-retaliatory nature and lawfulness of her termination—the first

9

supposition just wrong, and the second decided only in the course of administrative review, not constitutionally.[2]

To this point, the state court never adjudicated any First Amendment retaliation claim or determined whether her speech played a role in her termination. *Cf. Taylor v. City of Lawrenceburg*, 909 F.3d 177, 181 (7th Cir. 2018) (applying Indiana law) (finding issue preclusion barred a First Amendment retaliation claim because, as a matter of fact, the administrative agency found there was "'no causal connection' between the termination proceedings and the [protest] letter" the plaintiff had written and publicized). As illustration only, to succeed on today's First Amendment claim, Ms. Phillips need only show that her speech was a motivating factor in the decision to terminate her, not that it was the sole reason. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004); *Isabell v. Trs. of Ind. Univ.*, 432 F. Supp.3d 786, 796-97 (N.D. Ind. 2020). That the Merit Commission had substantial evidence for affirming the end of her employ might justify her termination under state administrative law, but not address the separate issue of whether retaliation for her speech also motivated the decision.

Perhaps more to the point of today's analysis, the court only reaches the issue of whether Ms. Phillips has plausibly alleged that her speech was constitutionally protected—whether it was articulated in her role as a private citizen versus in her role as a police officer as part of her official duties. And, on that issue, the defense makes no showing that the prior state court order decided

---

[2] Judge Michael Christofeno spelled out the two issues, those at least at a high level, quite clearly: "The issues before the Court are: (1) whether the Merit Commission's findings that [Ms. Phillips] engaged in conduct that constituted neglect or disobedience of orders, engaged in conduct unbecoming a member, engaged in immoral conduct, and engaged in conduct injurious to the public peace or welfare were arbitrary and capricious; and (2) whether the Merit Commission's sanction of dismissal was arbitrary and capricious." Although the order refers at one point to due process considerations, it never addresses issues of free speech under the First Amendment.

10

it, or even a component of the issue. Accordingly, the prior order lacks preclusive effect for what the court must decide today.

B. *First Amendment Retaliation (Count 1).*

Ms. Phillips claims all defendants violated her First Amendment rights by retaliating against her for protected speech. Under the First Amendment, applicable to the States under the Fourteenth Amendment, the government "shall make no law . . . abridging the freedom of speech." U.S. Const. amends. I, XIV; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, which was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Lane v. Franks*, 573 U.S. 228, 235-36 (2014) (quotations and citation omitted). Considerable value comes from "encouraging, rather than inhibiting, speech by public employees." *Id.* at 236. But "government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983). "When a citizen enters government service, the citizen by necessity must accept certain limitations on [her] freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

To state a First Amendment retaliation claim, the amended complaint must plausibly allege facts showing that (1) Ms. Phillips engaged in constitutionally protected speech, (2) she suffered an adverse employment action as a result of her protected speech that was sufficiently adverse so as to deter the exercise of the free speech, and (3) her speech was a substantial or motivating factor for her adverse employment action. *Davis v. City of Chi.*, 889 F.3d 842, 845 (7th Cir. 2018); *Graber v. Clarke*, 763 F.3d 888, 894 (7th Cir. 2014).

For the first requirement, the court decides whether the public employee's speech was protected, as the "inquiry into the protected status of speech is one of law, not fact." *Connick*,

11

461 U.S. at 148 n.7; *Navratil v. City of Racine*, 101 F.4th 511, 519 (7th Cir. 2024). To be protected under the First Amendment, a public employee must show that "(1) [she] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [her] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citation and quotation omitted).

Ms. Phillips identifies two types of speech for her First Amendment claim—reporting misconduct to her supervisors at the Elkhart Police Department and testifying publicly on this subject at the Elkhart Board of Public Safety hearing. The defense argues that her speech isn't constitutionally protected because she made these reports in her capacity and within her duties as a police officer, not as a private citizen. If the defense is in fact right, the First Amendment "generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022). As opposed to those of a private citizen, a public employee's statements made pursuant to official duties aren't entitled to First Amendment protection. *Garcetti*, 547 U.S. at 421-22.

So, at the start, the court must determine whether this pleading plausibly alleges speech as a private citizen or speech "pursuant to [her] official duties." *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421); *see also Kennedy*, 597 U.S. at 527. An employee's "statements about misconduct affecting an area within [her] responsibility are considered official-capacity speech even if [she is] not ordinarily responsible for investigating misconduct." *Fehlman v. Mankowski*, 74 F.4th 872, 875 (7th Cir. 2023); *accord McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) (same). This proves no less true in the context of a police department,

12

for "a police officer's duty to report official police misconduct is a basic part of the job." *Roake v. Forest Pres. Dist. of Cook Cnty.*, 849 F.3d 342, 346 (7th Cir. 2017); *accord Forgue v. City of Chi.*, 873 F.3d 962, 967 (7th Cir. 2017) (officer's reports of misconduct toward his own sons still a "basic part of the job"); *Vose v. Kliment*, 506 F.3d 565, 571 (7th Cir. 2007) (police officer "was merely doing his job" when he reported suspected police misconduct to his superiors); *cf. Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) (finding protected speech when part-time officer with no responsibilities for pursuing or voiding criminal citations, or for determining when and under what circumstances arrestees could be released, reported official misconduct to fellow officers and the FBI).

For this reason, Ms. Phillips' internal reports of the department's misconduct that she claims she observed necessarily fall within the ambit of her job duties. She was a full-time veteran police officer who, as she says, took her oath to protect the rights of citizens seriously. She made her reports only to her superiors within the chain of command or to other officers who share in the same duty to report misconduct and protect the public from harm, and these complaints focused exclusively on official misconduct by other officers (*e.g.*, signing a warrant application without probable cause, violating the rights of Elkhart citizens, or otherwise engaging in police misconduct). *See Roake*, 849 F.3d at 346 (citing cases). This was not private speech, but speech as a police officer within the scope of her duties.

Ms. Phillips also argues that her later speech at a public Board of Public Safety hearing about police misconduct was private. The court disagrees. Per the amended complaint, Ms. Phillips followed internal policy by filing a grievance to complain about her discipline (her three-day suspension). As part of this grievance process, the Board of Public Safety held a hearing over two days. She testified about witnessing "egregious police misconduct" at the department, that

13

she was ordered to violate the constitutional rights of Elkhart citizens, and that she observed or overheard other indications of police wrongdoing [8 ¶ 102-106].

Her testimony before the Elkhart Board of Public Safety—a five-member body established by state law and appointed by the mayor to oversee the police department's operations, and tasked too with hearing her grievance—necessarily fell within her job duties. *See, e.g.,* Ind. Code §§ 36-8-3-2(a), (b)(1), (d)(1). The Elkhart Board of Public Safety retains the "exclusive control over all matters" relating to the Elkhart Police Department, including the ability to "[a]dopt rules for the government and discipline of the police and fire departments." *Id.* She thus was not speaking as a private citizen, but as an employed officer with a grievance and with concerns about the department's affairs—and, once more, to the very body who could do something about them within the administrative or command structure. Based on this pleading, this was pursuant to her official duties as a matter of law. *See Garcetti*, 547 U.S. at 421-22; *see, e.g., Tamayo v. Blagojevich*, 526 F.3d 1074, 1091-92 (7th Cir. 2008) (testimony before a legislative committee, charged with oversight, alleging wrongdoing by public officials was made pursuant to official duties, as employee "had a duty to see that the law was administered properly").

In *Fehlman*, 74 F.4th at 874, for instance, a former police officer alleged First Amendment retaliation after he critiqued the police chief's leadership. He complained both directly to the chief and later to a police and fire commission, which by statute had disciplinary authority over police officers. *Id.* at 876. In holding that the officer's speech to the commission was made in his role as a police officer, the court noted the "statutory provisions governing [the commission] strongly suggest the body is best seen as part of [the officer's] chain of command" and the officer's "remarks a form of internal grievance." *Id.* No meaningful difference exists between the officer

14

in *Fehlman* and Ms. Phillips, particularly for a process she initiated, available only to her because of her position as police officer and because of the nature of her complaints.

Ms. Phillips cites two cases, but neither help her. In *Chrzanowski v. Bianchi*, 725 F.3d 734 (7th Cir. 2013) and *Houskins v. Sheahan*, 549 F.3d 480 (7th Cir. 2008), two different public employees (a prosecutor in the first and a social worker in the second case) sustained a First Amendment retaliation claim because they spoke as private citizens in non-employee capacities, not simply because they reported misconduct. The prosecutor testified before a grand jury and at trial about a supervisor's misconduct, not as part of any official duty but as a private citizen, in response to a subpoena, "fulfilling the general obligation of every citizen" to appear at such proceedings. *Chrzanowski*, 725 F.3d at 741. In short, the prosecutor's office paid him to prosecute crimes, not to witness crimes and then testify about them as compelled by some outside process (thus not within the chain of command or administrative review). *Id.* at 740.

In *Houskins*, 549 F.3d at 491, the court distinguished the social worker's internal complaint about an assault made pursuant to her official duties (one not protected by the First Amendment) from a subsequent police report about the same conduct that was filed as a private citizen (thus protected by the First Amendment). The first was "an obvious form of speech made pursuant to official duties under the *Garcetti* standard; it would require mental gymnastics to see it otherwise." *Id.* The second was "not generated in the normal course of her duties and most likely was similar to reports filed by citizens every day." *Id.*; *see also Swetlik*, 738 F.3d at 826 (police detective's statements made to the department's deputy chief and his investigator were not protected, whereas other statements presented at a union meeting were).

Ms. Phillips made her remarks about police misconduct only in channels that fell within her role and duties as police officer. Accordingly, as a matter of law, she has not alleged a plausible First Amendment retaliation claim. The court dismisses this claim (count 1).

C.  *Supervisory Liability, Failure to Intervene, Conspiracy, and Municipal Liability (Counts 2-5).*

Ms. Phillips alleges other variants of claims under § 1983. In short, each one of these claims cannot proceed on this pleading because she has not plausibly alleged a constitutional violation. For each, she asserts that the only constitutional violation of concern to underpin these other claims is her First Amendment right. Without it, these claims must be dismissed.

For one, Ms. Phillips brings a supervisory liability claim against Chief Seymore, Captain Whitmyer, Sergeant Young, Officer Milanese, Officer Hamlin, Officer Claybaugh, Officer Wrathel, Officer Houser, and Officer Roundtree (not quite all defendants). She alleges these defendants personally deprived her of a constitutional right, failed to supervise and train other defendants, or otherwise should have known of their subordinate's unconstitutional conduct [8 ¶ 247-254]. As a starting matter, there is no *respondeat superior* liability for constitutional claims, *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014), but she alleges their personal involvement (at least at some base level if not always one-to-one explaining plausibly how), *see Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (supervisory official must have had personal involvement in the constitutional deprivation to be liable under § 1983). Even giving her the benefit of the doubt there, absent a viable First Amendment claim (or other constitutional violation), her supervisory liability claim cannot proceed. "[F]or supervisory liability to attach under § 1983, [a plaintiff] must offer evidence of . . . a constitutional deprivation." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022).

16

For another, Ms. Phillips brings a failure to intervene claim against all defendants. She says the defendants stood by without intervening to prevent the misconduct, despite having the opportunity to do so, while she was deprived of her constitutional rights [8 ¶ 255-259]. Once more, she argues in briefing only one constitutional right—her First Amendment right—so the court confines its analysis to hew to this argument. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (party presentation rule). "[T]o establish a claim for failure to intervene, a plaintiff must show that the officer had reason to know 'that any constitutional violation has been committed by another law enforcement official; and the officer had a realistic opportunity to intervene to protect the harm from occurring.'" *Easley v. Reuss*, 247 F. Appx. 823, 827 (7th Cir. 2007) (quoting *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003)). Whether there might be a failure to intervene claim based on a First Amendment violation, and the court has found no such case, the failure of her First Amendment retaliation claim dooms her failure to intervene claim. "[F]or there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *see also Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention.").

For a third variant, Ms. Phillips alleges a conspiracy to deprive her of her constitutional rights against all defendants. She says all defendants agreed to retaliate against her [8 ¶ 260-266]. But she must also establish an underlying constitutional violation to support a § 1983 conspiracy claim because "conspiracy is not an independent basis of liability in [] § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *see also Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("jury's conclusion that [the plaintiff] suffered no constitutional injury thus forecloses relief on the conspiracy claim").

For the last, Ms. Phillips alleges a municipal liability claim against the City of Elkhart under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). She alleges that these Elkhart police officers took their actions pursuant to the policies and practices of the Elkhart Police Department, established by the City as the policymaker [8 ¶ 267-271]. For this claim, Ms. Phillips must plausibly allege (1) she suffered a deprivation of a federal right (2) as a result of an express policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority for the city (3) that was the cause (moving force) of her injury and (4) that exhibits municipal fault. *See Stewardson v. Titus*, 126 F.4th 1264, 1279 (7th Cir. 2025); *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023); *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021); *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Such a claim too requires a constitutional violation. *Petty v. City of Chi.*, 754 F.3d 416, 424 (7th Cir. 2014) ("if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.").

Thus, for these simple carryover reasons—because Ms. Phillips hinges these claims on her First Amendment right, and because the amended complaint cannot plausibly sustain a violation of that right as a matter of law—the court must dismiss these four claims (counts 2-5).

D.  *Intentional Infliction of Emotional Distress (Count 6).*

All federal claims have been dismissed in their entirety. The only remaining claim is based on Indiana state law. The defendants argue this state claim for intentional infliction of emotional distress should be dismissed for lack of supplemental jurisdiction. Ms. Phillips says this issue is premature, and requests permission to brief the subject of whether the court should retain jurisdiction over the claim.

But this is precisely the stage at which courts make such a determination. Generally, when "all federal claims are dismissed before trial, the district court should relinquish jurisdiction over

pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). There are three acknowledged exceptions to this rule: when (1) "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court;" (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort;" or (3) "when it is absolutely clear how the pendent claims can be decided." *Id.* (quotations and citations omitted). The court finds none of the exceptions applies to Ms. Phillips' state law claim and sees no reason to deviate from the "usual practice" of relinquishing supplemental jurisdiction. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

The statute of limitations will not have run on Ms. Phillips' claim, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998) (discussing Ind. Code § 34-11-8-1). Additionally, the court hasn't expended significant resources on any aspect of this case, outside of this motion to dismiss aimed largely at federal claims. The parties have not begun discovery, much less presented evidence or significant argument on the state law claim. Finally, it isn't absolutely clear how the emotional distress claim should be decided. And, as always, comity favors allowing state courts to decide issues of state law. *See Martin v. Ind. State Police*, 537 F. Supp. 2d 974, 989 (S.D. Ind. 2008) (unless remaining state claims are "no brainers," the "court's duty of comity toward Indiana courts in developing Indiana law directs the court to remand all state law claims to the state courts"). The court relinquishes supplemental jurisdiction over the emotional distress claim.

CONCLUSION

Accordingly, the court GRANTS the motion to dismiss [24, 26], DISMISSES the State of Indiana as an abandoned claim under Rule 15, DISMISSES counts 1-5 under Rule 12(b)(6) for failure to state a claim, DISMISSES count 6 for lack of supplemental jurisdiction, and DENIES AS MOOT the motion for extension of time to file an answer [21]. This order disposes of all claims as to all parties.[3]

SO ORDERED.

June 30, 2025                                  *s/ Damon R. Leichty*
                                               Judge, United States District Court

---

[3] For these reasons, the court need not address other arguments for dismissal advanced by the defendants or the alternative request to strike portions of the amended complaint under Rule 12(f).